IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MALCOLM CRAWFORD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:18-cv-00800 ) |
| CORE CIVIC, et al., | ) JUDGE RICHARDSON ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the Court is a *pro se* complaint for alleged violation of his civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), filed by Malcolm Crawford, an inmate in the Metro-Davidson County Detention Facility in Nashville, Tennessee. Plaintiff has also filed an application to proceed *in forma pauperis* (IFP) (Doc. No. 2), which the Court will grant by Order entered contemporaneously herewith. The complaint is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## INITIAL REVIEW OF THE COMPLAINT

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, § 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether

the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II.  SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that on at least 18 different occasions from February 2018 to July 2018 he was prevented from attending chapel services in the detention facility, either because staff failed to call inmates in his housing area to the service or because his housing area was on lock down. (Doc. No. 1 at 8, 12–13; Doc. No. 7 at 4.)[1] He alleges that other housing areas are called to the service when his is not, and that even when his area is on lock down, inmates are allowed out of their cells for other reasons, including work, education, and sick call. (Doc. No. 1 at 12; Doc. No. 7 at 2, 4.) He alleges that Defendant correctional officers Myers and Gordon have been personally responsible for preventing his attendance at chapel on some occasions. (Doc. No. 1 at 12; Doc. No. 7 at 6.) He also indicates that, according to staff, "[u]nless given authorization by the Warden or ADO member during lock down no one can leave the unit unless it's to go to work." (Doc. No. 7 at 6.) Plaintiff sues Core Civic, Warden Blair Leibach, Officers Myers and Gordon, and several other facility staff members seeking unspecified damages and an injunction preventing facility staff from denying access to chapel services. (Doc. No. 1 at 4–7.)

IV. ANALYSIS

Prisoners have a First Amendment right to practice their religious beliefs and must be provided "reasonable opportunities" to so. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).

---

[1] Plaintiff attaches several inmate grievances, responses, and resolutions to his complaint (Doc. No. 1 at 9–25), and he has supplemented those exhibits with additional institutional records attached to a notice of filing. (Doc. No. 7.) The Court considers all of these exhibits to be incorporated into the complaint for the purpose of initial review. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Nevertheless, an inmate's First Amendment right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. *Bell v. Wolfish*, 441 U.S. 520, 549–51 (1979) (holding that limited restriction against receipt of hardback books under certain circumstances was a rational response to a security problem and did not violate First Amendment rights of inmates); *Pollock v. Marshall*, 845 F.2d 656, 658–60 (6th Cir. 1988) (holding that plaintiff who challenged regulation limiting the length of prisoners' hair failed to establish a constitutional violation, as he did not demonstrate he was prevented from practicing his religion in ways other than being required to comply with the hair length regulation). The Supreme Court has held generally that "neutral, generally applicable laws that incidentally burden the exercise of religion usually do not violate the Free Exercise Clause of the First Amendment." *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015) (citing *Employment Div., Dept. of Human Resources of Ore. v. Smith*, 494 U.S. 872, 878–882 (1990)).

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, was enacted in response to those limitations on First Amendment religious liberties, for the specific purpose of providing "very broad protection for religious liberty." *Holt*, 135 S. Ct. at 859 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). The Supreme Court has commented on the broad shelter RLUIPA provides to religious practices:

> Several provisions of RLUIPA underscore its expansive protection for religious liberty. Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc–5(7)(A). Congress mandated that this concept "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc–3(g). And Congress stated that RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." § 2000cc–3(c).

*Holt*, 135 S. Ct. at 860. In order to state a claim for a RLUIPA violation, an inmate must allege that his "request for an accommodation [is] sincerely based on a religious belief" and that the

4

defendant's "policy substantially burdened that exercise of religion." *Id.* at 862. In order to establish a "substantial burden" for the purpose of RLUIPA, an inmate is not required to demonstrate that he has no alternative means of practicing his religion, that the exercise in question is "compelled" by his religion, or even that it is "central" to his religion. *Id.* RLUIPA prohibits the "substantial burden" of religious exercise except when the government can demonstrate that its policy is the least restrictive means of further a compelling governmental interest. *Id.* at 861.

Assuming the truth of Plaintiff's allegations, as the Court must do, he has arguably stated a claim under both these standards against Defendants Core Civic,[2] Warden Leibach, Officer Myers, and Officer Gordon sufficient to survive initial review. Whether Core Civic and the remaining Defendants can establish a legitimate interest to which their alleged policy is sufficiently tailored to withstand scrutiny under either the First Amendment or RLUIPA is an issue that requires further development.

However, with the exception of the Defendants named in the preceding paragraph, Plaintiff fails to allege anywhere in his complaint that any other Defendant was personally involved in preventing him from attending chapel services. Accordingly, he fails to state a claim against them, *see Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (requiring personal involvement for liability under § 1983), and those Defendants will be dismissed from this action.

---

[2] An inmate states a claim against a corporation performing traditional state functions when he alleges that his injury was caused by an action taken pursuant to some official policy or custom. *Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003). For the purpose of initial review, the Court finds Plaintiff satisfies that requirement with his indication that there is some policy governing which activities are and are not permitted during a lock down. (Doc. No. 7 at 6.) That same allegation suggests that Warden Leibach is personally responsible for administering that policy.

## **CONCLUSION**

For the reasons set forth above, the Court finds that Plaintiff states a non-frivolous claim for interference with his right to exercise his religion against Defendants Core Civic, Leibach, Myers, and Gordon. Process shall issue on that claim.

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE